OPINION
{¶ 1} On November 15, 2001, appellant, Gregory Vorshak, was injured while working for appellee, The Timken Company. Appellant was operating a die setter press when the machine double cycled causing the ram to hit appellant's hand.
 {¶ 2} On March 31, 2005, appellant filed a complaint against appellee, claiming employer intentional tort. Appellant alleged appellee was aware the machine was experiencing problems with double cycling. Appellee filed a motion for summary judgment on April 11, 2005. By judgment entry filed June 14, 2005, the trial court granted said motion.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 4} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHERE GENUINE ISSUES OF MATERIAL FACT EXIST CONCERNING THE EMPLOYERS KNOWLEDGE THAT INJURY WAS SUBSTANTIALLY CERTAIN TO OCCUR."
 I {¶ 5} Appellant claims the trial court erred in granting summary judgment to appellee. Specifically, appellant claims there exists a genuine issue of material fact on the issue of appellee's knowledge that harm to an employee was substantially certain to occur. We disagree.
 {¶ 6} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins,75 Ohio St.3d 447, 448, 1996-Ohio-211:
 {¶ 7} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex.rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511,628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."
 {¶ 8} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35.
 {¶ 9} In Fyffe vs. Jeno's Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus, the Supreme Court set forth the following elements which must be proved in order to establish an intentional tort against an employer:
 {¶ 10} "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task."
 {¶ 11} The trial court's decision rested on the second prong of Fyffe, thereby conceding for purposes of summary judgment that the machine was a "dangerous process, procedure, instrumentality or condition." We will limit our discussion to the sole issue of appellee's knowledge that harm to an employee was substantially certain to occur.
 {¶ 12} The evidence for our review includes the depositions of appellant and Ronald Shonk, and the affidavit of Robert Roush.
 {¶ 13} In its motion for summary judgment, appellee relied heavily on a decision from this court, Woodrum v. GlassflossIndustries, Inc., Fairfield App. No. 03CA42, 2004-Ohio-577. The plaintiff in Woodrum was the second shift manager, overseeing all aspects of second shift operations at the facility. The plaintiff was responsible for taking machines out of service if they needed repair or were unsafe for use. In affirming the trial court's decision to enter summary judgment in favor of the employer, this court stated the following at ¶ 15:
 {¶ 14} "Assuming, arguendo, the machine presented a dangerous condition, appellant has not presented sufficient evidence to satisfy the second prong of the Fyffe test. Appellant, in his role of shift manager, possessed the best, most current information about the cutter's condition and yet necessarily determined the machine was safe for use notwithstanding his report to maintenance. He had the authority to take the machine out of service, if he determined it needed repair or was unsafe to operate. Accordingly, knowledge cannot be imputed to Glassfloss of harm substantially certain to occur, where appellant himself had the authority to discontinue use of the machine, but chose to proceed. It would seem axiomatic appellant would not have chosen to put himself in harm's way if he was substantially certain he would be injured."
 {¶ 15} Based upon the very facts of this case, we find theWoodrum case does not apply sub judice. At the time of appellant's injury, Ronald Shonk was the department manager. Shonk depo. at 9. Appellant did not have any supervisory responsibilities. Id. at 10-11, 13. Appellant's job at the time of injury was operator of the die setter press; he did not set-up the machine. Id. at 11-13.
 {¶ 16} Appellee argued appellant had the right to take the machine out of operation. Appellant testified after the machine "double hit" the piece he was working on, he took his foot out of the foot pedal and started to inspect the machine. Vorshak depo. at 14, 17. Had the ram not come down and hit appellant's hand, he would have reported the malfunction to a foreman. Id. at 17. Appellant admitted that under his union contract, he could have stopped working on the machine if it was not operating properly. Id. at 35-36. This does not equate to a plant manager who has the responsibility to take a machine out of service; therefore, our decision in Woodrum does not apply.
 {¶ 17} However, our analysis under the standard of de novo review does not cease. The issue still remains of appellee's knowledge of the machine's malfunctioning.
 {¶ 18} In October 2001, one month prior to appellant's injury, the machine was double hitting or cycling and it was reported and allegedly repaired. Roush aff. at ¶ 3. The machine double cycled on two occasions in November prior to appellant's injury; the first one was reported, the second one was not. Id. at ¶ 4-9. We find these incidents alone are not sufficient to establish knowledge by appellee. We base our analysis on the testimony of Mr. Shonk. Mr. Shonk testified the cause of the double cycling was the set-up of the machine:
 {¶ 19} "A. After Greg's accident, we naturally tried to figure out what went wrong, first of all. First mistake was Greg was not using the tee stand. Second was, the switch was in the off position. The shoe switch was in the off position. And the foot pedal was in its on position. And it allowed the press to cycle without making that microswitch.
 {¶ 20} "Q. So the microswitch can be turned off and then it wouldn't be part of the safety function?
 {¶ 21} "A. That's correct. Wasn't set up correctly. When I say set up correctly, was not wired correctly. It should not have been able to do that.
 {¶ 22} "* * *
 {¶ 23} "* * * The die setter job is to set up the machine. Does that include the selection of the activation method on the specific press upon which Greg was injured?
 {¶ 24} "A. That's correct.
 {¶ 25} "Q. So whoever set up this machine chose at that time whether to use the foot pedal, whether to use the palm buttons, and/or whether to bypass the microswitch?
 {¶ 26} "A. That particular person who set that up, yes, improperly set it up, that's correct." Shonk depo. at 24 and 28, respectively.
 {¶ 27} Given that the machine was set up at the beginning of the shift and a report of the issue was not made to appellee, we find the evidence does not prove or impugn any knowledge to appellee of a substantial certainty of harm to an employee.
 {¶ 28} Upon review, we find the trial court did not err in granting summary judgment to appellee.
 {¶ 29} The sole assignment of error is denied.
 {¶ 30} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
Farmer, J. and Boggins, J. concur.
Hoffman, P.J. dissents.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.